**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL HASKINS,

                              Plaintiff,

        - v -                                          Civ. No. 5:05-CV-292
                                                              (DNH/RFT)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

**APPEARANCES:**                              **OF COUNSEL:**

OLINSKY SHURTLIFF LAW FIRM            HOWARD OLINSKY, ESQ.
Attorney for Plaintiff
300 S. State Street, 5th Fl.
Syracuse, New York 13202

HON. GLENN T. SUDDABY                    WILLIAM H. PEASE
United States Attorney–Northern District of New York     Assistant United States Attorney
100 South Clinton Street
Syracuse, New York 13261

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

        In this action, Plaintiff Michael Haskins moves, pursuant to 42 U.S.C. § 405(g), for review

of a decision by the Commissioner of Social Security denying his application for Social Security

Disability Insurance Benefits (DIB).[1]  Based upon the following discussion, this Court recommends

that the Commissioner's decision denying Social Security benefits be **affirmed.**

---

        [1] This case has proceeded in accordance with General Order 18,  which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 7 & 10.  The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

## I. BACKGROUND

### A. Claimant's History

Plaintiff was thirty-four years old at the time of the Administrative Law Judge (ALJ) Hearing.  Dkt. No. 6, Admin. Tr. [hereinafter "Tr."] at pp. 53-54 & 98.  He completed high school through the ninth grade.  *Id.* at pp. 57 & 110.  Plaintiff is left-hand dominant and claims a disability due to bilateral carpal and cubital tunnel syndrome.  *Id*. at pp. 55 & 104; Dkt. No. 7, Pl.'s Br., at p. 2.  Plaintiff's previous work history includes experience as a mason tender, mobile home set-up person, and machine operator in a wire manufacturing company.  Tr. at pp. 61-63, 105, & 118-21.

Plaintiff testified that he can sit, walk, and stand without limitation, and that he can lift and carry fifty to sixty pounds, but that his arms would be in pain doing so.  *Id.* at pp. 70-71 & 129.  Plaintiff also testified that he can bend, squat, stoop, crawl, climb, kneel, crouch, balance, grasp light items, and reach with both hands.  *Id.* at pp. 73-75.  Plaintiff maintains a driver's license and drove to the Hearing; he also drives about three times per week for an average of eight to ten miles each trip.  *Id.* at p. 57.  Plaintiff testified that he does household chores such as cooking five nights per week, doing laundry, and sweeping floors.  *Id.* at pp. 76-77.  He stated that he watches television and socializes with friends, visits his father-in-law across the street, and feeds and dresses himself.  *Id.* at pp. 77-78 & 129.  He further testified that he could perform a "sit-down type of a job" and if he was offered a job he would take it, although he could not do any of his past work.  *Id.* at pp. 81-83.

### B. Procedural History

On October 8, 2002, Plaintiff filed for DIB, alleging a disability onset date of August 8, 2001.  *Id*. at pp. 98-100 & 104.  This application was denied initially.  *Id*. at pp. 90-94.  On May 14, 2004, a Hearing was held before ALJ Craig DeBernardis, *id.* at pp. 50-89, who, on May 28, 2004,

issued an unfavorable decision against Plaintiff, *id.* at pp. 19-28.  The Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the Commissioner's final determination. *Id.* at pp. 4-7 & 10.  Having exhausted all administrative remedies before the Social Security Administration (SSA), Plaintiff now brings this appeal.

### C.  Medical History

Plaintiff's medical records consist of treatment reports and opinions from various treating and/or examining physicians and other sources, including: 1) Daniel Murphy, Jr., M.D., Treating Orthopedic Surgeon, of University Orthopedics & Sports Medicine; 2) Stacy Griffith, P.T.,[2] 3) an independent medical examiner (IME) for the Worker's Compensation Board; and 4) an agency medical examiner. *Id.* at pp. 137-214.  The opinion of a vocational expert (VE), Patricia Scutt, was also obtained. *Id.* at pp. 84-87.

### 1.  Carpal Tunnel and Cubital Tunnel Syndrome

On August 16, 2001, Plaintiff saw Dr. Daniel Murphy for bilateral wrist pain and hand numbness, which was worse on the right. *Id.* at p. 142.  At that time, Haskins was working as a wire machine operator, which required him to repeatedly twist wire. *Id.* at pp. 163 & 142.  Dr. Murphy diagnosed Plaintiff with right flexor tendonitis, right carpal tunnel syndrome and possible right cubital tunnel syndrome. *Id.* at p. 142.  Dr. Murphy opined that Plaintiff was unable to work at that time. *Id.*

On October 10, 2001, Dr. Murphy performed right carpal tunnel release surgery. *Id.* at pp. 145 & 198.  He performed left carpal tunnel release on November 7, 2001. *Id.* at p. 149.  Plaintiff saw Dr. Murphy for follow-up on November 14, 2001, at which point Dr. Murphy indicated that

---

[2] Ms. Griffith notes that she is certified in mechanical diagnosis and therapy and is a certified functional capacity evaluator. Tr. at p. 202.

Plaintiff would be able to return to work in about a month. *Id.* at p. 197. Physical therapy was prescribed for increasing grip strength and desensitization. *Id.* Thereafter, on November 28, 2001, Dr. Murphy noted Haskins was progressing in physical therapy, though he still had a moderate amount of bilateral scar tenderness and puffiness. *Id.* at p. 196. Dr. Murphy directed Haskins to continue with physical therapy and felt that he may be able to return to regular duty within two weeks. *Id.*

On December 20, 2001, Plaintiff complained of discomfort, peri-scar numbness, and swelling in his hands. *Id.* at p. 195. He also complained of pain and weakness in both hands when he tries to do strengthening exercises. *Id.* Upon physical examination, Dr. Murphy observed that Haskins' bilateral wrist motion had improved, but was still limited in extension, and his grip was limited to about twenty pounds. *Id.* Continued physical therapy was recommended. *Id.* Dr. Murphy stated that Plaintiff should be considered totally disabled as of that date. *Id.*

On January 31, 2002, Plaintiff complained of numbness in the ulnar distribution of both hands with some tenderness around the elbow. *Id.* at p. 194. Physical examination showed mild to moderate edema in the forearm and palms and tenderness in the flexor tendons. *Id.* Dr. Murphy opined that Plaintiff's hand conditions permanently disabled him from his regular job, which had consisted mainly of heavy work. *Id.* On March 21, 2002, Dr. Murphy stated that Plaintiff's hands were stable. *Id.* at p. 193. Plaintiff complained of medial elbow pain and numbness in the ulnar nerve distribution, which was worse on the right than the left. *Id.* Physical examination showed positive Tinel's at the cubital tunnels. *Id.*

An IME for the Worker's Compensation Board opined that Plaintiff could not lift, push, or pull greater than ten pounds, could not do any activity involving forceful gripping or rapid motion

of either wrist or elbow, and was unable to use any power or vibratory tools. *Id.* at p. 145. The IME recommended cubital tunnel surgery. *Id.*

Plaintiff underwent anterior transposition of the ulnar nerve at the elbow surgery for treatment of cubital tunnel on the right on April 15, 2002, and on the left on July 3, 2002. *Id.* at pp. 146 & 148. Plaintiff followed up with Dr. Murphy on September 5, 2002, who opined that Plaintiff should not return to a job that involved lifting more than ten to fifteen pounds. *Id.* at p. 186. On October 3, 2002, Dr. Murphy noted that Plaintiff had stopped participating in physical therapy because he had not been making any progress. *Id.* at p. 185. On examination, Dr. Murphy noted full motion of Haskins' elbows, hands and wrists. *Id.* Dr. Murphy felt a functional capacity evaluation (FCE) was appropriate and recommended Plaintiff contact the Vocational and Educational Services for Individuals with Disabilities (VESID) for retraining. *Id.*

At the request of Dr. Murphy, Physical Therapist Stacy Griffith completed a residual functional capacity (RFC) assessment on November 5, 2002. *Id.* at pp. 201-08. PT Griffith reported that Plaintiff exhibited "good effort," which suggested "valid results." *Id.* at p. 201. PT Griffith found that Plaintiff retained the RFC to perform "sedentary-light" work as defined under the Dictionary of Occupational Titles (DOT).[3] *Id.* PT Griffith further stated that Plaintiff may benefit from a work hardening program, emphasizing strength and conditioning of the upper extremities. *Id.*

## II. DISCUSSION

### A. Standard of Review

---

[3] The DOT's classifications of sedentary and light have the same meaning as the exertional classifications in the Regulations. *See* Social Security Ruling 00-4p, *Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, 2000 WL 1898704, at *3 (S.S.A. 2000); *see also infra* note 6 (setting forth the SSA definitions of sedentary and light work).

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied.  *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record.  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g).  Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed.  *Johnson v. Bowen*, 817 F.2d at 986.

### B.  Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national

economy.  *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations.  20 C.F.R. § 404.1520.  At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity."  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends.  20 C.F.R. § 404.1520(b).  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities.  *Id.* at § 404.1520(c).  If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations.  *Id*. at § 404.1520(d).  The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience.  *Berry v. Schweiker*, 675 F.2d at 467.  Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity.  *Id*.  If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner determines the claimant's RFC,[4] which is utilized in both Steps Four and Five.  20 C.F.R. § 404.1520(e).  If at Step Four, the Commissioner determines that the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy.  *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 404.1520(f).

---

[4] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations."  20 C.F.R. § 404.1545(a).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467.  If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id*.; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990).  In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills.  20 C.F.R. § 404.1520(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C.  The ALJ's Findings

In his written decision, ALJ DeBernardis stated that Haskins met the non-disability requirements under the statute and was insured for benefits through the date of the decision. Following the five-step disability evaluation, ALJ DeBernardis determined (1) Plaintiff had not engaged in any substantial gainful activity since August 21, 2001; (2) Plaintiff suffered from severe impairments, namely residual effects of bilateral carpal tunnel surgery and ulnar surgery on his left arm; (3) Plaintiff's severe impairments did not meet nor equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff retained the RFC to lift and/or carry ten pounds occasionally and frequently; stand and/or walk for a total of six hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; push and/or pull occasionally with the upper extremities; climb stairs and ramps frequently and ladders, ropes, scaffolds never; balance, stoop, kneel, crouch, and crawl frequently; handle and finger occasionally; and avoid concentrated

exposure to fumes, gases and poor ventilation, and as such, he could not perform his past relevant work; (5) but, considering his RFC, age, vocational background, the VE testimony, and using Medical-Vocational Rule 201.26 as a framework for decision-making, a significant number of jobs existed in the national economy that Plaintiff could perform.  Tr. at pp. 27-28.  After reviewing the administrative transcript, the Court finds that the ALJ applied the correct legal standards and his findings are supported by substantial evidence of record.

### D.  Claimant's Contentions

Plaintiff contends that the ALJ's decision should be reversed, or, in the alternative, the matter be remanded, because (1) the ALJ failed to consider Plaintiff's right ulnar nerve surgery; (2) the ALJ failed to fully develop the record when he failed to obtain a RFC assessment from Dr. Murphy, Plaintiff's Treating Physician, and by failing to order a consultive organicity evaluation; (3)  the ALJ's RFC assessment was not based on substantial evidence and his assessment of Plaintiff's credibility was erroneous; and (4) the ALJ improperly relied on a flawed vocational expert opinion in meeting his burden at Step Five.  Pl.'s Br. at pp. 6-16.  The Court will consider each of Plaintiff's contentions *seriatim.*

### 1.  The ALJ's Consideration of Plaintiff's Right Ulnar Nerve Surgery

Plaintiff argues that the ALJ failed to consider his right ulnar nerve surgery, and, because it was not considered as a severe impairment at Step Two, Plaintiff contends the ALJ omitted consideration of his right arm surgery completely.  Pl.'s Br. at pp. 8-9.

At Step Two, the ALJ stated the following: "The evidence supports a finding that the claimant suffers from residual effects of bilateral carpal tunnel surgery and ulnar surgery on his left arm, impairments which cause significant vocationally relevant limitations and are, therefore, severe

impairments under the Social Security Act, as amended." Tr. at pp. 20 -21.  As the Plaintiff

correctly notes, the ALJ did not mention Plaintiff's right ulnar surgery as a severe impairment.

However, the ALJ did not completely ignore the existence of Plaintiff's right ulnar nerve surgery

and, in fact, found specific limitations resulting from the surgery.  For example, in assessing

Haskins' RFC, the ALJ specifically noted that Haskins' orthopedic surgeon, Dr. Murphy, performed

a "right cubital tunnel anterior transposition of the ulnar nerve at the elbow." *Id.* at p. 23.  Moreover,

the ALJ described Plaintiff's medical conditions, including the right ulnar nerve surgery, as they

impacted both of Plaintiff's hands, and the ALJ's RFC assessment included limitations dealing with

both left and right. *Id.* at pp. 21-23.  The ALJ also described Plaintiff's conditions as they impacted

both hands when posing hypothetical situations to the VE.  *Id.* at pp. 85-87.  Thus, the record

demonstrates that the ALJ fully considered all of the medical evidence, including the right ulnar

nerve surgery, when coming to his decision.  The Court declines to recommend remand on this basis.

## 2.  ALJ's Duty to Develop the Record

Plaintiff argues that the ALJ failed to meet his duty to develop the record when he failed to

request an opinion from Dr. Murphy regarding Plaintiff's functional limitations and when he failed

to order a consultive organicity evaluation.  Pl.'s Br. at pp. 10-12 & 14-15.  Neither of these

contentions, as explained more fully below, provide a basis for remand.

### a.  Duty to Obtain a Treating Physician's Opinion

In light of the remedial intent of the Social Security statute, and the non-adversarial nature

of benefits proceedings, an ALJ has an affirmative duty to develop the medical record. *Tejada v.*

*Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. § 404.1512(d) ("Before we make a determination

that you are not disabled, we will develop your complete medical history for at least the 12 months

preceding the month in which you file your application . . . .").  This duty applies even where, as

here, a claimant is represented by counsel.  *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).

        In accordance with the Regulations, an ALJ must make "every reasonable effort to help [the

claimant] get medical reports from [his or her] own medical sources[,]" *Perez v. Chater*, 77 F.3d at

47 (quoting 20 C.F.R. § 404.1512(d)), and to re-contact a claimant's treating physician "if the

information received from the treating physician or other medical source is inadequate to determine

whether the claimant is disabled[,]" *Rodriguez ex rel Silverio v. Barnhart*, 2003 WL 22709204, at

*3 (E.D.N.Y. Nov. 7, 2003); *see also* 20 C.F.R. § 404.1512(e).  The duty to develop the record

includes the obligation of advising the plaintiff of the importance of such evidence.  *Jones v. Apfel*,

66 F. Supp. 2d 518, 524 (S.D.N.Y. 1999).  Only if such efforts fail, can the ALJ then close the

record and issue a decision.  *See Devora v. Barnhart*, 205 F. Supp. 2d 164, 175 (S.D.N.Y. 2002).

        Though there have been instances where this Court found that an ALJ failed to develop the

record when he failed to re-contact a claimant's treating physician, the facts in this case would not

support such a finding.  Plaintiff was represented by counsel throughout the Administrative Hearing

level.  In response to Plaintiff's request for a Hearing, the ALJ sent Plaintiff's counsel a letter

reminding him of the claimant's responsibility to provide medical evidence that showed the

existence and severity of an impairment and further directing counsel to provide such medical

evidence if not already included in the medical record.  Tr. at p. 39.  At the Hearing, Plaintiff's

counsel indicated he wanted to submit further medical evidence and was provided two weeks to do

so, but, as of the date of the ALJ's decision, none had been provided.  *Id*. at pp. 19 & 53.

        Under the Regulations, a medical source is required to be re-contacted if there exists

ambiguities or conflicts within the medical records or if the medical records are inadequate for the

*-11-*

Commissioner to render a decision.  20 C.F.R. § 404.1512(e); *see also*, *e.g.*, *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." (quoted in *Miano v. Barnhart*, 2007 WL 764977, at *6 (E.D.N.Y. Mar. 14, 2007)).  This case does not present such a scenario.  Included in the medical record from which the ALJ rendered his disability decision are treatment notes from Dr. Murphy, CNY Prompt Care, NYS Worker Compensation Medical Examination, St. Joseph's Hospital, Syracuse Orthopedics Specialists, Fitness Forum, as well as an agency disability examiner's RFC.  Tr. at pp. 137-214.  The records range in date from August 9, 2001 (on or about the alleged onset disability date), through November 19, 2002 (disability examiner's RFC assessment).  *Id*.  In his claim for relief before this Court, Haskins has not indicated what medical evidence was omitted from the record, nor did he present any to the Appeals Council or this Court.  Thus, it is unclear what utility there would be in re-contacting Dr. Murphy.  The medical record reveals that, after performing ulnar nerve surgery on Haskins' left arm (for treatment of cubital tunnel syndrome), Dr. Murphy opined, on September 5, 2002, that Haskins was limited to lifting only 10-15 pounds.  Tr. at p. 186.  The following month, Dr. Murphy recommended a FCE be performed in order to fully comprehend Haskins' capabilities and further recommended Haskins contact VESID for retraining.  *Id*. at p. 185.  A FCE was performed at Dr. Murphy's behest on November 5, 2002, by Stacy T. Griffith, a physical therapist who is certified in mechanical diagnosis and therapy (MDT).  *Id*. at pp. 201-08.  And, in conjunction with his disability application, a disability examiner reviewed the medical record and provided a RFC.  *Id*. at pp. 209-14.  All medical opinions contained within the record are consistent not only with each other, but also with the

-12-

medical evidence as a whole.  Thus, since no conflicts nor ambiguities are contained within the medical record, there was no obligation to re-contact Dr. Murphy.  *Contra Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) ("[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly.") (citing, *inter alia*, *Clark v. Comm'r of Soc. Servs.*, 143 F.3d 115, 118 (2d Cir. 1998) and further quoted in *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)).  Thus, there is no basis for remand on this allegation.

### b. Consultive Intelligence Evaluation

Plaintiff argues that his limited education and participation in special education "raised the issue of [his] intellectual functioning," and mandated that the ALJ order a consultative mental evaluation.  Pl.'s Br. at pp. 14-15.

Plaintiff bears the burden of establishing mental impairments.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  In order to be deemed severe, a claimant's mental impairment must have a significant effect on his or her ability to perform work related activities, such as understanding, carrying out, and remembering simple instructions, using judgment, and responding appropriately to supervision, coworkers and usual work situations.  *See* 20 C.F.R. §§ 404.1520a & 404.1521. According to the SSA Program Operations Manual System (POMS), the suggestion of a possible mental impairment must come from either the claimant himself or must be based upon the medical record.  *See* POMS at § DI 24505.030, *available at* https://secure.ssa.gov/apps10/poms.nsf (last visited August 12, 2008).  In the event that treatment for an alleged mental impairment has not been recommended nor received, such as here, an adjudicator is not required to initiate an investigation of a possible mental impairment, unless the claimant himself has alleged a mental impairment.  *Id*.

at § DI 24505.030(D)(2)(a).  Haskins has never, until now, alleged the existence of a mental impairment.  In fact, his submissions to the SSA suggest otherwise.  In a functional report completed by Plaintiff on October 19, 2002, Plaintiff indicated he is able to maintain his own hygiene without help or reminders from others (Tr. at pp. 125-26), he can maintain his finances (Tr. at p. 128), remains social with friends and family (Tr. at p. 129), can follow through with tasks, has no problem paying attention, can follow oral and written instructions, has no trouble remembering things, can get along with people in positions of authority (Tr. at p. 130), and has never lost a job due to inability to get along with others (Tr. at p. 131).  Since there is no evidence in the record to suggest that Plaintiff sought, received, or was recommended mental treatment, nor did Plaintiff himself allege a mental impairment at any point during the administrative process, the ALJ was not under any duty to order a mental evaluation.  POMS at § DI 24505.030(D)(2)(a);[5] Tr. at pp. 95, 104, & 124-31.  As such, the Court will not recommend remand on this basis.

### 3.  RFC

Plaintiff contends that the ALJ's RFC determination is not based upon substantial evidence.  Pl.'s Br. at pp. 9-12.  To reiterate, the ALJ made the following RFC assessment:

> [Haskins] retains the residual functional capacity to lift and/or carry ten pounds occasionally and frequently; stand and/or walk for a total of six hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; push and/or pull occasionally with his upper extremities; climb stairs and ramps frequently, ladders, ropes and scaffolds never; balance, stoop, kneel, crouch and crawl frequently; handle

---

[5] Even if Haskins had suggested a mental impairment, the ALJ still was under no duty to order a consultive medical exam.  According to POMS, where a claimant suggests a possible mental impairment, but no treatment has been recommended or received, the ALJ must assess whether there is any evidence of work-related functional limitations resulting from the possible mental impairment.  POMS at § DI 24505.030 (D)(2)(a).  "If the evidence does not support work-related functional limitations resulting from the possible mental impairment, additional mental development is NOT necessary and completion of a [Psychiatric Review Technique Form] PRTF is NOT required.  Review by a psychiatrist or psychologist is NOT necessary."  *Id.*  As explained above, the evidence does not suggest work-related functional limitations stemming from any mental impairment and therefore, the ALJ committed no error when he did not pursue a consultive organicity evaluation.

and finger occasionally; withstand fumes, odors, dusts, gases and poor ventilation, provided he avoids concentrated exposure to the same.

Tr. at p. 21.

The Court finds that in rendering this RFC, the ALJ applied the correct legal standards and his assessment is supported by substantial evidence.

RFC is the most a claimant is capable of doing despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545(a). In rendering a RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain, and description of other limitations. *Id*. § 404.1545(a)(3); *see Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). An ALJ must specify the functions a claimant is capable of performing and may not simply make conclusory statements regarding a claimant's capacities. *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990).

In the case at bar, the ALJ considered the medical evidence, including medical opinions from acceptable medical sources opining on the nature and severity of Haskins' impairments. In this regard, the ALJ noted that the opinions included in the medical record all supported an RFC of sedentary to light work.[6] The ALJ found that the agency medical examiner's RFC was "well-

---

[6] The Social Security Regulations define light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Whereas sedentary work is defined as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are

(continued...)

supported by medically acceptable clinical and laboratory diagnostic techniques, <u>and</u> is 'not inconsistent' with the other substantial evidence in the case record." Tr .at p. 23. On this basis, the ALJ gave considerable weight to this opinion. Aside from criticizing the ALJ's mis-characterization of the medical examiner as a "medical consultant," the Plaintiff offers no evidence to rebut the ALJ's reliance on this RFC. Notably, the ALJ found, based upon <u>all</u> the evidence, that Haskins' limitations were actually greater than those propounded by all the opinions of record.

The ALJ further considered Plaintiff's alleged symptoms, including pain, to the extent such symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. *Id*. at p. 24; 20 C.F.R. § 404.1529. In doing so, the ALJ properly found that Plaintiff's complaints were not totally credible.

After considering a claimant's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject a claimant's subjective testimony. 20 C.F.R. § 404.1529(c)(4); *Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984); *Martone v. Apfel*, 70 F. Supp. 2d at 151. In evaluating a claimant's complaints of subjective symptoms, such as pain, an ALJ must consider several factors set forth in the Regulations including:

(i)     [The claimant's] daily activities;
(ii)    The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
(v)     Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;
(vi)    Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20

---

[6](...continued)
met.
20 C.F.R. § 404.1567(a).

minutes every hour, sleeping on a board, etc.); and

(vii)  Other factors concerning [claimant's] functional limitations and restrictions
due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

If the ALJ rejects a claimant's subjective testimony, he must explicitly state the basis for doing so

with sufficient particularity to enable a reviewing court to determine whether those reasons for

disbelief were legitimate, and whether the determination is supported by substantial evidence.

*Martone v. Apfel*, 70 F. Supp. 2d at 151 (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608

(S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the reviewing

court must uphold the ALJ's decision to discount Plaintiff's subjective complaints of pain.  *Aponte*

*v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

In this case, the ALJ thoroughly considered Plaintiff's subjective complaints of pain as they

related to the medical record as a whole.  Tr. at pp. 21-25.  The ALJ took note of Plaintiff's daily

activities, which included driving approximately three times per week for eight to ten miles at a

time, cooking dinner for his family five days per week, cleaning the house, picking up dirty clothes,

sweeping the floor, watching television, and visiting friends three to four times per week.  *Id.* at pp.

22 & 76-78.  Plaintiff testified that he is capable of grooming and taking care of his hygienic needs,

but that he was unable to do laundry, make a bed, vacuum, or perform gardening or yard work.  *Id.*

at pp. 22 & 79.  The ALJ noted Plaintiff's testimony that he could lift, but not carry, fifty to sixty

pounds,  he had no problems walking, and could stand or sit all day, bend, squat, stoop, crawl, climb

ladders and ramps, kneel, balance, crouch, and reach without any problems.  *Id.* at pp. 22 & 70-74.

The ALJ also discussed Plaintiff's testimony that he would take a job if he could find one that he

could perform and would like to do and that he could work a job as a sit-down guard, but would not

like to do that job.  *Id.* at pp. 23 & 81.

*-17-*

The ALJ also noted inconsistencies between Plaintiff's testimony and the medical evidence. For example, Plaintiff stated that he could not perform any work involving heavy lifting, but he also stated that he did some construction work with his brother-in-law in the summer of 2003. *Id.* at pp. 58 & 83. Additionally, although Plaintiff testified to extensive limitations based on pain, he was only using over-the-counter medications to alleviate his pain. *Id.* at p. 68.

After reviewing the record, we find that the ALJ considered the appropriate factors and followed the proper analysis in discounting Plaintiff's subjective complaints of pain. *Martone v. Apfel*, 70 F. Supp. 2d at 151. The ALJ's credibility determination was properly explained and supported by substantial evidence of record, and thus cannot be disturbed on review. *Aponte v. Sec'y, Dep't of Health & Human Servs*, 728 F.2d at 591.

### 4. Vocational Expert Testimony

At the Hearing, the ALJ elicited the testimony of VE Patricia Scutt. Tr. at pp. 84-87. The ALJ posed three hypothetical scenarios to the VE. First, the ALJ asked the VE to assume a person of Plaintiff's age, vocational and educational background, with the ability to occasionally and frequently lift and/or carry ten pounds; stand, walk, and/or sit for a total of six hours in an eight-hour workday; push and/or pull limited occasionally with the upper extremities; climb stairs and ramps frequently, but never ladders, ropes, or scaffolds; balance, stoop, kneel, crouch, and crawl frequently; and avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. *Id.* at pp. 85-86. The VE testified that such an individual could not perform work as a machine operator or mobile home set up person, representing Plaintiff's past work, since such work requires lifting and pushing capabilities beyond that expressed in the hypothetical. However, such individual could perform work existing in significant numbers in the national economy, specifically dispatcher and

information clerk.  *Id.* at p. 86.

The second hypothetical asked the VE to assume that the individual described in the first hypothetical, with the addition that handling and fingering would be limited to occasionally.  *Id.* at p. 86.  The VE testified that such a person could not work as a dispatcher, but could work as an information clerk, alarm systems monitor,[7] or storage rental clerk, and that all three of these positions were classified at the sedentary level by the Dictionary of Occupational Titles ("DOT").  *Id.* at pp. 86-87.  It appears, however, that the information clerk and storage rental clerk positions are actually classified at the "light" rather than "sedentary" level of work.  United States Dep't of Labor, *Dictionary of Occupational Titles*, 1991 WL 672187 (information clerk) & 1991 WL 672594 (storage rental clerk) (4th ed. rev. 1991).

In the third hypothetical, the ALJ asked the VE to recall the parameters of Hypothetical #1 and further assume that the individual could never handle and finger.  *Id.* at p. 87.  The VE responded that this further limitation would preclude the person from working.  *Id.*

In his written decision, after determining at Step Four that Plaintiff's RFC precluded a return to his previous work, the ALJ proceeded to consider, at Step Five, whether Plaintiff could perform work that exists in the national economy.  *Id.* at p. 26.  The ALJ noted that Plaintiff's limitations exceeded the full range of sedentary work, and thus, he could not rely solely on the Medical-Vocational Guidelines (the "Grids") to direct a determination of "disabled" or "not disabled."  *Id.*  But, in light of the VE testimony in response to Hypothetical #2, and using the Grids as a guideline, the ALJ found that Plaintiff could perform the work of an alarm system operator and a storage rental clerk, work that exists in significant numbers nationally and regionally.  Thus, the ALJ determined

---

[7] This job is actually listed as "surveillance-system monitor."  United States Dep't of Labor, *Dictionary of Occupational Titles*, 1991 WL 673244 (4th ed. rev. 1991).

that Plaintiff was not disabled.

Plaintiff contends that the VE's testimony was inconsistent with the DOT and the ALJ erred when he failed to ask the VE to resolve the inconsistency and then improperly relied upon the flawed testimony in finding Plaintiff could perform other work. Pl's Br. at 12-14. Plaintiff further argues that because the jobs of information clerk and storage rental clerk are actually classified as light work, which exceeds his RFC, the only job identified by the VE that Plaintiff could perform was alarm systems monitor (or "surveillance system monitor"), which is classified as sedentary work, and that the diminution of classes of jobs constitutes an erosion of the occupational base of which Plaintiff could work. *Id.*

We acknowledge that because the VE erroneously classified the information clerk and storage rental clerk jobs, the ALJ was not entitled to rely on those classifications. *See* Social Security Ruling (SSR) 00-4p, *Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions,* 2000 WL 1898704, *3-4 (S.S.A. 2000). Thus, the question becomes whether the existence of the job of surveillance system monitor was sufficient to constitute work existing in significant numbers in the national economy which Plaintiff could perform.

As noted by the VE (and relied upon by the ALJ), approximately 145,000 surveillance system monitor jobs exist nationally and 1,050 regionally. Tr. at pp. 26 & 87. According to the Regulations, "[w]ork exists in the national economy when there is a significant number of jobs (**in one or more occupations**) having requirements which [a claimant is] able to meet with [the claimant's] physical or mental ability and vocational qualifications." 20 C.F.R. § 404.1566(b) (emphasis added). The Regulations also provide that,

work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country.  It does not matter whether –

    (1) Work exists in the immediate area in which [the claimant] live[s];

    (2) A specific job vacancy exists for [the claimant]; or

    (3) [The claimant] would be hired if [he or she] applied for work.

*Id*. at § 404.1566(a).

Courts have generally held that what constitutes a "significant" number is fairly minimal. *See Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (citing various cases such as *Trimiar v. Sullivan*, 966 F.2d 1326, 1330-32 (10th Cir. 1992) (850-1,000 potential jobs is a significant number of jobs), *Nix v. Sullivan*, 744 F. Supp. 855, 863 (N.D. Ind), *aff'd*, 936 F.2d 575 (7th Cir. 1991) (675 jobs is a significant number), *Barker v. Sec'y of Health and Human Servs.*, 882 F.2d 1474, 1479 (9th Cir. 1989) (1,266 jobs is a significant number), *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs is a significant number), *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (1,350 jobs is a significant number), and *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs is a significant number)); *see also Johnson v. Chater*, 108 F.3d 178 (8th Cir. 1997) (200 jobs in entire State of Iowa and 10,000 nationally is a significant number); *Wright v. Chater*, 969 F. Supp. 143, 147-48 (W.D.N.Y. 1997) (1700 jobs in the Finger Lakes region is a significant number).  Similarly, we find that the number of jobs identified by the VE for the surveillance system monitor position alone constitutes a significant number of jobs, which the ALJ properly relied upon in finding that work existed in the national and regional economy that Plaintiff could perform and, thus, was not disabled.  *See* 20 C.F.R. § 404.1566(a); SSR 00-4p, 2000 WL 1898704 at *2-3.  Because the surveillance system monitor job constituted other work which Plaintiff could perform, and indeed, Plaintiff himself admitted he could perform such work, the Court finds that the ALJ's reliance on the erroneous portion of the VE's testimony was harmless error.  *See McEaney v. Comm'r of Soc.*

*Security*, 536 F. Supp. 2d 252, 256 (N.D.N.Y. 2008) (Hurd, D.J.) (applying harmless error rule to social security disability review); *see also Jones v. Barnhart*, 2003 WL 941722, at *10 (S.D.N.Y. Mar. 7, 2003) (citing cases for the proposition that harmless error rule applies to social security disability review); *Seltzer v. Comm'r of Soc. Sec.*, 2007 WL 4561120, at *10 (E.D.N.Y. Dec. 18, 2007) (citing, *inter alia*, *Walzer v. Chater*, 1995 WL 791963, at *9 (S.D.N.Y. Sept. 26, 1995) for the proposition that an ALJ's error is harmless where correct analysis would not have changed outcome). Thus, the Court declines to recommend remand on the basis of the ALJ's reliance on VE testimony.

### III.  CONCLUSION

In light of the foregoing discussion, it is clear that in finding Plaintiff was not disabled, the ALJ applied the correct legal standards and his factual findings were supported by substantial evidence. Thus, this Court recommends that the ALJ's decision be upheld.

**WHEREFORE,** it is hereby

**RECOMMENDED,** that the Commissioner's decision denying disability benefits be **AFFIRMED;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R.

CIV. P. 72, 6(a), & 6(e).


Date:    September 11, 2008
         Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge